IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

|  |  |
|---|---|
| McCARTHY BUILDING COMPANIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TPE KENTUCK SOLAR, LLC, et al., <br><br> Defendants. | Civil Action No. 4:20CV00057 |
| TPE KENTUCK SOLAR, LLC, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> WGL ENERGY SYSTEMS, INC., and WGSW, INC. <br><br> Third-Party Defendants. | |

**<u>THIRD-PARTY COMPLAINT</u>**

Pursuant to Federal Rule of Civil Procedure 14(a)(1), Defendant/Third-Party Plaintiff TPE Kentuck Solar, LLC ("TPE Kentuck"), files its Third-Party Complaint against Third-Party Defendants WGL Energy Systems, Inc. ("WGL"), and WGSW, Inc. ("WGSW"), and alleges in support thereof as follows:

1

## THE PARTIES

1.     Third-Party Plaintiff, TPE Kentuck, is a Delaware limited liability company with its principal office located at 200 Liberty Street, 14th Floor, New York, NY 10281. At all times relevant hereto TPE Kentuck was, and remains, registered to do business in Virginia.

2.     Third-Party Defendant WGL is a Delaware stock corporation with its principal office, according to the records of the Virginia State Corporation Commission, located at 8614 Westwood Center Drive, Vienna, VA, 22182. At all times relevant hereto, WGL was, and remains, registered to do business in Virginia.

3.     Third-Party Defendant WGSW is a Delaware stock corporation with its principal office, according to the records of the Virginia State Corporation Commission, located at 8614 Westwood Center Drive, Vienna, VA, 22182. At all times relevant hereto, WGSW was, and remains, registered to do business in Virginia.

## JURISDICTION

4.     This Court has supplemental jurisdiction over TPE Kentuck's third-party claims pursuant to 28 U.S.C. § 1367(a), because the claims are based on the same nucleus of operative facts as Plaintiff's claims in the underlying case.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), because a substantial part of the events giving rise to the claims for relief occurred in this forum.

## PRELIMINARY STATEMENT

6.  Third-Party Plaintiff and Third-Party Defendants are sophisticated business entities engaged in, among other things, the construction, operation, and maintenance of commercial-scale solar power generation facilities. As the result of extensive negotiations between the Third-Party Defendants as sellers and TPE Kentuck's parent company, TerraForm Arcadia Holdings, LLC ("TerraForm"), as buyer, TerraForm agreed to purchase a variety of assets from the sellers. As part of this agreement the sellers made various representations and warranties to TerraForm and agreed to indemnify TerraForm and its subsidiaries from any claims and causes of action arising out of any breach of the representations and warranties.

7.  Prior to the sale TPE Kentuck was a wholly-owned subsidiary of WGL. TPE Kentuck was one of the assets sold to TerraForm as part of the sale.

8.  Prior to the sale, while still owned by WGL, TPE Kentuck entered into a contract with McCarthy Building Companies, Inc. ("McCarthy") to construct a solar project. Before the sale McCarthy notified TPE Kentuck that it was seeking approximately $3,000,000.00 in excess payments under the contract. This claim was not disclosed as part of the sale. After the sale the underlying suit was brought against TPE Kentuck, giving rise to a claim for indemnification under the parties' agreement. The Third-Party Defendants have failed to fulfill their indemnification obligations thus necessitating the filing of this third-party Complaint.

## STATEMENT OF FACTS

### MIPA

9.  WGL and WGSW as sellers, and TerraForm Arcadia Holdings, LLC, as buyer, entered into a Membership Interest Purchase Agreement, dated July 19, 2019, to transfer certain

3

assets from sellers to TerraForm (the "MIPA"). A true and accurate copy of the MIPA will be filed, under seal, as **Exhibit A**.

10. One asset transferred to TerraForm was TPE Kentuck as shown on Schedule 3.04(a) of the MIPA. Each entity listed on Schedule 3.04(a) of the MIPA is defined as "Company Subsidiary" in the MIPA.

11. In Section 3.07 of the MIPA the Sellers represented and warranted that "No Company or Company Subsidiary has any liabilities, obligations or commitments of a type required to be reflected on a balance sheet prepared in accordance with GAAP, except: (a) as set forth on Schedule 3.07; (b) those which are reflected or reserved against in the Financial Statements; (c) those which have been incurred in the conduct of a Company's or Company Subsidiary's business in the ordinary course of business consistent with past custom and practice (including with respect to quantity and frequency) since the date of the Financial Statements (and do not relate to breach of contract, tort or noncompliance with Applicable Law); and (d) those which would not reasonably be expected to be material to the applicable Company or Company Subsidiary."

12. Section 3.19 of the MIPA states that "Except as set forth on Schedule 3.19 and as reflected in the Working Capital, immediately before the Closing: (a) no Company or Company Subsidiary has any Indebtedness; (b) no Company or Company Subsidiary has guaranteed or otherwise become responsible for any Indebtedness or other Liabilities of any Person; and (c) none of any Company's or Company Subsidiary's Membership Interests or other ownership interests, as applicable, or its assets is encumbered or burdened by any Indebtedness."[1]

---

[1] "Indebtedness" is defined in Section 1.01 of the MIPA as meaning: "with respect to any Person, without duplication: (a) all obligations of such Person for borrowed money; (b) all obligations of such Person evidenced by bonds, debentures, notes or other similar instruments; (c) all obligations of such Person to pay the deferred purchase price of property or services (other than

13. Section 9.02 of the MIPA states in relevant part that "Subject to the other terms and conditions of this Article IX, each Seller shall severally and not jointly, in proportion to their respective share of the Purchase Price, indemnify Buyer, its Affiliates and their respective shareholders, members, officers, managers, directors, employees, agents, attorneys and representatives and successors and assigns (collectively, the "Buyer Indemnified Parties") against, and shall hold the Buyer Indemnified Parties harmless from and against, any and all Losses incurred or sustained by, or imposed upon, the Buyer Indemnified Parties based upon, arising out of, with respect to or by reason of: (a) any inaccuracy in or breach of any of the representations or warranties of such Seller contained in this Agreement; [and] (b) any breach or non-fulfillment of any covenant, agreement or obligation to be performed by such Seller pursuant to this Agreement…."

14. The term "Losses" used in Section 9.02 of the MIPA is defined in Section 1.01 as follows: "'Losses' means actual losses, damages, demands, claims, actions or causes of action, assessments, judgments, settlements, penalties, Liabilities, Taxes, costs or expenses, including reasonable attorneys' fees (incurred with respect thereto and any interest and penalties arising with respect to a third party or Tax claim)."

**Claim by McCarthy**

15. On August 28, 2017, McCarthy, as contractor, entered into a written contract with TPE Kentuck, as System Owner, titled "Amended and Restated Solar Photovoltaic System

---

trade accounts payable arising in the ordinary course of business not overdue for more than sixty (60) days); (d) all capital lease obligations of such Person; (e) all obligations of such Person to reimburse any Person with respect to amounts paid under a letter of credit or similar instrument; (f) all obligations of such Person under interest rate hedge agreements; (g) all indebtedness of other Persons secured by an Encumbrance (other than Permitted Encumbrances) on any property of such Person, whether or not such indebtedness is assumed by such Person; and (h) all indebtedness of other Persons guaranteed by such Person."

Engineering, Procurement, and Construction Agreement" (the "Agreement") to install a solar photovoltaic system on a property leased by TPE Kentuck in Ringold, Virginia (the "Project"). A true and accurate copy of the Agreement will be filed, under seal, as **Exhibit B**.

16. On August 26, 2018, Matt McMullan, on behalf of McCarthy, sent a letter to TPE Kentuck (which, at the time, was wholly owned by WGL) informing it of damage to the Project. McCarthy indicated it would look to TPE Kentuck for all costs associated with the repair of the Project.

17. On September 14, 2018, Michael Fahey, on behalf of WGL, responded to McCarthy's letter disputing WGL's obligation to reimburse McCarthy for expenses relating to the repairs.

18. Subsequent to the sale of TPE Kentuck to TerraForm, Matt McMullan, on behalf of WGL, continued a dialogue with McCarthy attempting to resolve the dispute over the damage claim.

19. On April 10, 2020, McCarthy sent WGL a notice of dispute pursuant to the Agreement which was followed on June 5, 2020, by a similar notice sent by counsel for McCarthy.

20. On May 18, 2020, Benjamin Israel, counsel for WGL, in a communication with Jared Schoch, president of Turning Point Energy (the parent company of TPE Virginia, the lessor to TPE Kentuck of the property where the Project is located), indicated that he was communicating with McCarthy's general counsel regarding the claim and asked that Mr. Schoch "not engage McCarthy directly on this matter to the extent it involves any potential clam against WGL Energy Systems."

21. Mr. Israel, on May 20, 2020, in continuation of the email exchange referenced in Paragraph 20, wrote to Megha Shah, General Counsel for TPE Kentuck's parent company,

reiterating that he had told Turning Point Energy to "stand clear and be patient" and that he was "talking with McCarthy's GC regarding both the mechanics lien and the insurance claim."

22. On September 18, 2020, McCarthy filed the Complaint in the underlying action seeking reimbursement for expenses incurred to make repairs to the Project due to damage incurred prior to July 19, 2019, the date of the MIPA.

## COUNT I - BREACH OF CONTRACT/INDEMNIFICATION

23. The foregoing allegations are incorporated hereby as if fully set forth.

24. Under the MIPA, Third-Party Defendants warranted, among other things, that TPE Kentuck did not have "any liabilities, obligations or commitments of a type required to be reflected on a balance sheet prepared in accordance with GAAP, except: (a) as set forth on Schedule 3.07; (b) those which are reflected or reserved against in the Financial Statements; (c) those which have been incurred in the conduct of a Company's or Company Subsidiary's business in the ordinary course of business consistent with past custom and practice (including with respect to quantity and frequency) since the date of the Financial Statements (and do not relate to breach of contract…" and that TPE Kentuck had no "Indebtedness" to any third-party other than as disclosed in the MIPA and its attachments.

25. WGL was, prior to and up to closing under the MIPA, the owner of TPE Kentuck.

26. WGL was aware of the claim by McCarthy prior to entering into the MIPA.

27. The Third-Party Defendants warranted that no such claim as that asserted by McCarthy in the underlying action existed and were required to disclose McCarthy's claim as part of the MIPA but did not do so.

28. Under the MIPA the Third-Party Defendants are obligated to indemnify TPE Kentuck from all losses incurred as a result of their breach of their obligations under the MIPA.

7

29. Under the MIPA the Third-Party Defendants agree to share "in proportion to their respective share of the Purchase Price" all indemnification obligations.

30. TPE Kentuck has satisfied all conditions precedent to the Third-Party Defendants' indemnification obligations including provision of timely and satisfactory notice of the claim asserted against it by McCarthy.

31. To date, the Third-Party Defendants have failed and refused to indemnify TPE Kentuck and TPE Kentuck has been required to obtain counsel and defend itself in the underlying action thereby incurring substantial expense, and to the extent that any recovery may be had against it in the underlying action it will incur additional expense which should justly be borne by the third-party Defendants pursuant to their contractual obligation to indemnify.

WHEREFORE, Third-Party Plaintiff, TPE Kentuck, prays that it be awarded its attorneys' fees, costs, and other expenses, incurred in the present action and in the underlying action, and in the event judgment is entered against TPE Kentuck in the underlying action that judgment be entered in the same amount in favor of TPE Kentuck and against the Third-Party Defendants in this action, and any other relief the Court finds just and proper.

Respectfully submitted,

TPE KENTUCK SOLAR, LLC

by counsel.

**/S/ Neal L. Walters**
Neal L. Walters, Esq. (VSB No. 32048)
Henry C. Young, Esq. (VSB No. 91677)
*Counsel for Defendant/Third-Party Plaintiff*
*TPE Kentuck Solar, LLC*
Scott│Kroner PLC
418 East Water Street
P.O. Box 2737

>Charlottesville, VA 22902
>Telephone: (434) 296-2161
>Fax: (434) 293-2073
>E-mail: nwalters@scottkroner.com

## CERTIFICATE OF SERVICE

      I hereby certify that on January 4, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties therein identified and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: N/A.

>**s/Neal L. Walters**
>Neal L. Walters, Esq.
>*Counsel for Defendant/Third-Party Plaintif TPE Kentuck Solar, LLC*
>Scott│Kroner PLC
>418 East Water Street
>P.O. Box 2737
>Charlottesville, VA 22902
>Telephone: (434) 296-2161
>Fax: (434) 293-2073
>E-mail: nwalters@scottkroner.com

9