CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAR 09 2021
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| MCCARTHY BUILDING COMPANIES, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 4:20cv00057<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| TPE VIRGINIA LAND HOLDINGS, LLC, and TPE KENTUCK SOLAR, LLC, | ) By:   Hon. Thomas T. Cullen<br>)         United States District Judge<br>)<br>) |
| Defendants. | )<br>) |

Defendant TPE Virginia Land Holdings, LLC ("TPE Virginia") leased property in Pittsylvania County, Virginia, to Defendant TPE Kentuck Solar, LLC ("Kentuck") for the purposes of constructing and operating a solar farm. Kentuck hired Plaintiff McCarthy Building Companies, LLC ("McCarthy") to build it. When some of its invoices allegedly went unpaid, McCarthy filed the instant suit, seeking compensation. TPE Virginia asserts that it carries no possible liability as it is only a disinterested landlord and a legal—and factual—stranger to the relationship between McCarthy and Kentuck. The court agrees that, at this stage, McCarthy has failed to state a claim against TPE Virginia and will grant its motion to dismiss.

### I.   FACTS AND PROCEDURAL HISTORY

In 2017, TPE Virginia leased land it owns in Pittsylvania County to Kentuck, so that Kentuck could construct a solar photovoltaic system ("the Facility"). TPE Virginia and Kentuck's Lease consisted of three periods: a Construction Period, an Operations Period, and

a Decommissioning Period. (Lease § 4 [ECF No. 24-1].) The Construction Period was set to end at the *earlier* of the date the local electric power distribution company issued permission to operate the Facility, or December 31, 2017. (*Id.* § 4(a).) Rent was set at $29,450 during the Construction Period, and $58,900 per year during the Operations Period. (*Id.* § 8(a)–(b).)

    Under the agreed terms of the Lease:

> All equipment and structures included within the Facility shall, to the maximum extent permitted by law, be personal property and not real property or fixtures to real property, and title to the Facility shall be in Tenant or Tenant's mortgagees and assigns. Neither Landlord nor anyone claiming through Landlord shall have the right to file liens on the Facility or Tenant's interest in the Lease and Landlord hereby waives and releases each and every right upon which Landlord now has, or may have, under the laws of the Commonwealth of Virginia to levy or distrain upon for rent, in arrears in advance or both, or to claim or assert title to the Facility or any of Tenant's property located on the Lease Area or installed thereon.

(*Id.* § 10(d).) Additionally, the Lease expressly permits Kentuck to assign its rights under the Lease, provided certain conditions were met. (*See id.* § 15.)

    On August 28, 2017, Kentuck contracted with McCarthy to construct the Facility on the property. The Facility was not completed before December 31, 2017, so under the terms of the Lease, rent payments automatically increased prior to completion of the Facility. (*See id.* § 4(a).) After substantially completing the project, as evidenced by McCarthy and Kentuck's "Notice of Final Completion," executed on March 11, 2018, McCarthy asserts it performed additional work outside of and not contemplated by its contract with Kentuck.

    McCarthy alleges that it performed certain "site" work on the property "to fix damage from force majeure events and concealed conditions," and that those repairs were outside of the contract it signed with Kentuck. (Am. Compl. ¶ 64–66 [ECF No. 29].) It alleges that, in

doing those site repairs, "McCarthy conferred a benefit on . . . TPE Virginia and . . . Kentuck by providing the Improvements, which were used to repair the Project and make improvements to the Property, with the reasonable expectation that . . . McCarthy would be paid for the same." (*Id.* ¶ 67.) McCarthy claims that both TPE Virginia and Kentuck were aware of the additional site work and should have expected to pay for it. (*Id.* ¶ 69.)

Because it performed work for which it was not compensated, McCarthy recorded memorandums for two mechanic's liens in state court on April 3, 2020, naming both TPE Virginia and Kentuck. (*Id.* ¶¶ 36, 51.) McCarthy claims it is owed $2,996,245.00 for the work it performed on the project, but for which it was never paid. (*Id.* ¶ 22.)

McCarthy filed a verified complaint in this court on September 18, 2020, and filed an amended complaint on December 4, alleging breach of contract against Kentuck only (Count I); a claim to enforce a mechanic's lien on retainage, presumably against Kentuck and TPE Virginia (Count II); a claim to enforce a mechanic's lien, presumably against Kentuck and TPE Virginia (Count III); unjust enrichment against Kentuck and TPE Virginia (Count IV); and *quantum meruit* against Kentuck only (Count V). TPE Virginia has filed a motion to dismiss Counts II, III, and IV against it.[1]

The court heard oral argument on the motion to dismiss on February 9, 2021. After reviewing the arguments and pleadings of the parties, as well as the applicable law, the court is prepared to rule on TPE Virginia's motion.

---

[1] Further procedural history, including third-party pleading, has been omitted as the third-party defendants, WGL Energy Systems, Inc. and WGSW, Inc., are not involved in the present motion.

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557.)

## III. ANALYSIS

### A. Counts II and III: Mechanic's Liens

TPE Virginia contends it is not a necessary or proper party to McCarthy's claims to enforce its mechanic's liens. Because a mechanic's lien is in derogation of the common law, "there must be a substantial compliance with the requirement of that portion of the statute which relates to the creations of the [mechanic's] lien; but . . . the provisions with respect to its enforcement should be liberally construed." *Am. Standard Homes Corp. v. Reinecke*, 245 Va. 113, 119 (1993). Once a party complies with the relevant statutory requirements to perfect a mechanic's lien, it may bring suit to enforce it. Va. Code Ann. § 43-22 (2020).

"A mechanic's lien enforcement action 'must name all necessary parties within the time set forth by Code § 43-17, and a failure to name a necessary party as a defendant requires dismissal." *Glasser, PLC v. Jack Bays, Inc.*, 285 Va. 358, 369 (2013). "The Code [of Virginia] does not provide an answer as to which parties are necessary parties to a mechanic's lien enforcement action." *Synchronized Const. Servs., Inv. v. Prav Lodging, LLC*, 288 Va. 356, 363–64 (2014). Virginia courts therefore look to common law authority to "supply the answer," and have "consistently defined 'necessary party' broadly." *Id.* at 364.

Generally, Virginia has described necessary parties as follows:

> Where an individual is in the actual enjoyment of the subject matter, or has an interest in it, either in possession or expectancy, which is likely either to be defeated or diminished by the plaintiff's claim, in such case he has an immediate interest in resisting the demand, and all persons who have such immediate interests are necessary parties to the suit.

*Asch v. Friends of Mt. Vernon Yacht Club*, 251 Va. 89, 90–91 (1996). "As a mechanic's lien enforcement action implicates real property rights, [the Virginia Supreme Court] ha[s] turned to due process principles to determine who is a necessary party in such litigation." *Id.* (citing *Walt Robbins, Inc. v. Damon Corp.*, 232 Va. 43, 46–47 (1986)). Accordingly, "any party who has a real property interest in the real estate subject to the mechanic's lien" is a necessary party. *Id.*

Because it is the owner of the leased property, this language suggests that TPE Virginia is a necessary party. After all, "[a] necessary party to a mechanic's lien enforcement action must have a specifically defined interest in the 'subject matter' of the res of that litigation, which [the Virginia Supreme Court] ha[s] repeatedly defined as being . . . the real estate . . . ." *Id.* at 367. But that assumption mistakes what is the actual "res" of the litigation. Under the mechanic's lien statute, "if the person who shall cause a building or structure to be erected or

repaired owns less than a fee simple estate in the last, *then only his interest therein shall be subject to liens created under this subchapter.*" Va. Code Ann. § 43-20 (emphasis added). The question, therefore, is not who has an interest in the land generally; rather, the court must ask who has an interest in the "part" of the land that Kentuck possesses. Specifically: Who has an interest in Kentuck's leasehold interest?[2] McCarthy concedes that this is the controlling question in footnote 4 of its brief: "McCarthy notes that its liens were properly recorded against only TPE Kentuck's leasehold interest in the property. . . . McCarthy does not dispute that TPE Virginia's ownership interest in the Property is not subject to the mechanic's liens under the facts associated with this matter . . . ." (Mem. in Opp. pg. 8 n.4 [ECF No. 37].)

Under that standard, it is clear that only Kentuck is a necessary party. TPE Virginia has no "property interest" in the portion of the property it has leased away. *See* Va. Code Ann. § 43-20. Although TPE Virginia has an interest in the land that is leased, it has no "real or property interest" in the *leasehold estate*; only Kentuck does.

And nothing can happen to the leasehold interest in this litigation that would "defeat or diminish" TPE Virginia's title to the property. Under the "worst-case" scenario, McCarthy could foreclose on the leasehold interest, and another tenant would take over the lease. TPE Virginia would have the same rights and obligations under the Lease, and the new tenant would have the same rights and obligations that Kentuck currently possesses. TPE Virginia's

---

[2] Black's Law Dictionary defines a leasehold as "[a] tenant's possessory estate in land or premises, the four types being the tenancy for years, the periodic tenancy, the tenancy at will, and the tenancy at sufferance." *Leasehold*, Black's Law Dictionary (8th ed. 2004). It further notes that, "[a]lthough a leasehold has some of the characteristics of real property, it has historically been classified as a chattel real." *Id.* Virginia law also indicates that a leasehold is a chattel interest. "A lease for a year, or term of years, is not a freehold. It is a chattel interest. . . . As to the suggestion . . . that such a lease is a chattel, we think that it should also be observed that it is not a mere chattel which passes by delivery, but a chattel real." *Hannan v. Dusch*, 154 Va. 356, 365 (1930).

property interest would also not be diminished if, as a result of Kentuck's leasehold interest being sold to satisfy McCarthy's liens, it was forced into a relationship with a less desirable tenant—that is, a "lesser" lessor. That outcome would not affect TPE Virginia's interest in the property, only the ease of enforcing its lease. Because no outcome in a mechanic's lien suit can affect the legal title that TPE Virginia holds, it is not a necessary party to enforce McCarthy's mechanic's lien against Kentuck.

At least one other court has reached the same conclusion, although it was not applying Virginia law and the opinion is therefore not controlling. In *Cabana, Inc. v. Eastern Air Control, Inc.*, 487 A.2d 1209 (Md. Ct. Spec. App. 1985), the Maryland Court of Special Appeals considered who was a necessary party in a suit to enforce a mechanic's lien against a lessor. In that case, based on Maryland law, the court held that the tenant, not the landlord, was a necessary party to a suit to enforce a mechanic's lien because Maryland law "recognizes that a lien can be held against a building apart from the land, because it is an *in rem* right against improved property." *Cabana, Inc.*, 487 A.2d at 618; *see also* Va. Code Ann. § 43-20. The same is true under Virginia law. Because it is not a necessary party to the claims to enforce McCarthy's mechanic's liens, those claims (Counts II and III) will be dismissed against TPE Virginia.

### B. Count IV: Unjust Enrichment

Under Virginia law, "[t]he cause of action for unjust enrichment . . . applies as follows: (1) plaintiff conferred a benefit on defendant; (2) defendant knew of the benefit and should reasonably have expected to repay plaintiff; and (3) defendant accepted or retained the benefit without paying for its value." *T. Musgrove Constr. Co. v. Young*, 298 Va. 480, 486 (2020) (cleaned up); *see also Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008) (citing *Nedrich v. Jones*, 245

Va. 465, 476 (1993)). "One may not recover under a theory of implied contract simply by showing a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit." *Nedrich*, 245 Va. at 476 (citing *Mullins v. Mingo Lime & Lumber Co.*, 176 Va. 44, 51 (1940)).

McCarthy claims its site improvements increased the value of the Lease, and thus conferred a benefit on TPE Virginia. On the facts alleged, however, and considering the Lease at issue, McCarthy has not reasonably alleged that TPE Virginia received a benefit from its work. According to the terms of the Lease, both the terms and payments were fixed long before McCarthy performed any work. Any extensions to the Lease could only occur at the tenant's (Kentuck's) election. (*See* Lease § 4(b) (noting that the "operations period" may be extended for up to 15 years total "[a]t Tenant's option").) Thus, insofar as McCarthy argues the "value of the lease" has increased as a result of its work, that assertion is undermined by the plain terms of the Lease, which establish that the value of the Lease to TPE Virginia is the same now as it was before McCarthy became involved.

But even if there was a "benefit" to TPE Virginia, McCarthy has not sufficiently alleged that TPE Virginia "reasonably expected" to pay for it. McCarthy argues that it "performed its construction of the Facility and Improvements to the Property with an expectation that it would be paid for such work, by either the lessee (TPE Kentuck) or by the landowner/lessor (TPE Virginia)." (Mem. in Opp. pg. 7.) While that is true, a plaintiff's expectation of payment is *not* the second element of an unjust enrichment claim. Rather, the second element requires a showing that *the party who received or retained the benefit* reasonably expected to pay for it. *See, e.g.,*

*T. Musgrove Constr. Co.*, 298 Va. at 486 (noting the second element is that the *defendant* knew of the benefit and reasonably expected to pay plaintiff for it); *Schmidt*, 276 Va. at 116 (same).

Other courts have stated the elements of an unjust enrichment claim as: "(1) a benefit conferred on the defendant by the plaintiff; (2) *knowledge on the part of the defendant* of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *NorthStar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1021 (E.D. Va. 2018) (emphasis added) (quoting *Firestone v. Wiley*, 485 F. Supp. 2d 694, 704 (E.D. Va. 2007)). Even under that construction, McCarthy's pleadings fail. McCarthy did not allege in its amended complaint what additional work TPE Virginia was aware of, or facts that permit an inference that TPE Virginia would reasonably have expected to pay for that work. "One may not recover under a theory of implied contract simply by showing a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit." *Nedrich*, 245 Va. at 476. Absent that allegation, Count IV fails to state a claim against TPE Virginia for unjust enrichment and will be dismissed.

At oral argument, McCarthy posited—for the first time—that the site work it performed was required by local governmental authorities because runoff from TPE Virginia's property was damaging adjacent property. But these facts were not alleged in the complaint. Thus, regardless of whether or not the court is persuaded that such an allegation would bring this case under the control of *T. Musgrove Construction Company, Inc. v. Young*, 298 Va. at 487 (approving an unjust enrichment claim where the law compelled that some action be taken, even though the defendant was unaware that such action was being taken in its name), the

court cannot insert allegations into an operative complaint for the plaintiff. Accordingly, TPE Virginia's motion to dismiss will be granted as to Count IV, but McCarthy will be granted leave to amend.[3]

### IV. CONCLUSION

TPE Virginia is not a necessary party to McCarthy's suit to enforce either of its mechanic's liens. TPE Virginia's motion to dismiss Counts II and III will be granted with prejudice. Further, McCarthy has not alleged a benefit to TPE Virginia, nor has it alleged facts to suggest that TPE Virginia should reasonably have expected to pay for any benefit conferred on it by McCarthy. Accordingly, Count IV will be dismissed, and McCarthy will be given leave to amend.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 9th day of March, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[3] At oral argument on the motion to dismiss, McCarthy requested leave to amend its pleadings, should be court be inclined to grant the motion to dismiss. Under Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." The court finds that standard is met here.